**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 22-CR-184-JFH** |
| **JORDAN JAMES HODGES,** | |
| **Defendant.** | |

<u>**OPINION AND ORDER**</u>

Before the Court is a motion to suppress ("Motion") filed by Defendant Jordan James Hodges ("Defendant"). Dkt. No. 22. The Court referred the Motion to United States Magistrate Judge Christine D. Little for issuance of a report and recommendation ("R&R"). Dkt. No. 31. Magistrate Judge Little held a hearing on the Motion on October 12, 2022 [Dkt. No. 33] and issued her R&R on October 28, 2022 [Dkt. No. 41]. The R&R recommends the Court deny Defendant's Motion. *Id.* Defendant filed an objection to the R&R ("Objection"), stating the only issue he contested was that he "maintains that the officers lacked reasonable suspicion or probable cause" when they detained him. Dkt. No. 50 at 2. The Government filed a response to the Objection. Dkt. No. 51.

When a party objects to an R&R, the Court is statutorily required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* For the reasons stated herein, the Court ACCEPTS the R&R in this case and DENIES Defendant's Motion.

## BACKGROUND

Defendant encountered law enforcement while he was riding across an open field on an all-terrain vehicle ("ATV").  Officers stopped him because they were investigating stolen property in the area, including a stolen ATV with similar characteristics.  After stopping Defendant, law enforcement determined that the ATV he had been riding was the same ATV that had been stolen.  Additionally, when law enforcement stopped Defendant, they found a .22 caliber rifle and ammunition on the ATV.  Defendant is a convicted felon who is prohibited from possessing firearms.

Defendant challenges the stop on the basis that officers did not have a reasonable suspicion that criminal activity was afoot when they stopped him.  The Magistrate Judge conducted an evidentiary hearing on the factual basis for Motion.  Dkt. No. 33.  The Court has reviewed the hearing transcript [Dkt. No. 45], summarizes it here briefly, and incorporates the Magistrate Judge's factual background description by reference [Dkt. No. 41].

Officer Whitney Reynolds ("Reynolds") of the Delaware County Sheriff's Office ("DCSO") testified that in April 2020, she was called to investigate an abandoned ATV on private property.  *Id.* at 8.  Reynolds found the ATV's ignition had been tampered with and it had a distinctive sticker on the front of the vehicle.  *Id.*  Reynolds ran the ATV's vehicle identification number ("VIN") and the report did not come back as stolen.  *Id.* at 9.  The property owner told Reynolds she had already posted on Facebook to see if anyone claimed the ATV.  *Id.*  A second individual saw the property owner's Facebook post, called DCSO, and reported that the ATV in the post had been stolen from him.  *Id.* at 10.  Once DCSO officers took a report from this second individual, they issued a "BOLO" or "be on the lookout" about the ATV.  *Id.* at 14.

The next month, on May 19, 2020, Reynolds went to assist the Department of Agriculture in an investigation about people squatting without permission and stolen property. *Id.* They approached the land, were given permission to enter it by one of the individuals who had been staying there,[1] and found several items that had been reported stolen. *Id.* at 15. Law enforcement next tried to make contact at a residence near the land and were directed to "across the street in the field." *Id.* at 16. During law enforcement's investigation, they found an RV with a tampered lock along with a truck and excavator on a trailer. *Id.* at 18. Around this time, Reynolds said officers "heard the ATV coming." *Id.*

Reynolds described the scene as, "A [sic] ATV came down the hill, high rate of speed. It was, like, a little two-track. There wasn't a track there, but it was just small area. Turned around and came back towards us . . . . [going a]nywhere from 50 to 55. It was enough to throw up dust." *Id.* at 19. Reynolds said she "immediately identified the ATV as stolen" from her previous investigation and identified a .22 caliber rifle on the ATV. *Id.* at 20. After Reynolds "announced very loudly that it was stolen," the ATV came to a stop. *Id.* Reynolds said she was unsure whether she "actually stop[ped] the ATV" or it came to a stop on its own. *Id.* Officers then identified Defendant, informed him that he was detained for safety reasons, did a safety pat, and escorted him to a captain who was working the scene. Reynolds searched the ATV's VIN and confirmed that it was stolen. *Id.*

After the Government rested at the Motion hearing, defense counsel called Ricky Rushing ("Rushing"), who was an Oklahoma Department of Agriculture agent and FBI task force officer at the time of the charged conduct. *Id.* at 94. He answered affirmatively when defense counsel

---

[1] The individuals apparently had previously owned the land, but it had been foreclosed on by Bank of America. *See id.* at 14, 26, 68.

asked if Reynolds and Rushing "stood in the road" to "intercept" Defendant.  *Id.* at 96.  Rushing said Reynolds "had seen [the ATV] and recalled that that was a four-wheeler that she had been investigating and she believed to be stolen."  *Id.*  Defense counsel suggested that the ATV was "quite a distance away" and Rushing disagreed, saying it "[didn't] seem like a long distance" but he could not estimate the proximity.  *Id.* at 97.

## AUTHORITY AND ANALYSIS

"The Fourth Amendment permits police to effect a brief stop in order to investigate the possibility of criminal involvement if they have a reasonable, articulable suspicion that criminal activity is afoot."  *United States v. Conner*, 699 F.3d 1225, 1230 (10th Cir. 2012) (quotation omitted).  "Such a stop is a Fourth Amendment seizure, but does not require probable cause." *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012).  Although an officer must have "more than an inchoate and unparticularized suspicion or hunch, the level of suspicion required for reasonable suspicion is considerably less than proof by a preponderance of the evidence or that required for probable cause."  *United States v. McHugh*, 639 F.3d 1250, 1255-56 (10th Cir. 2011) (quotations and citations omitted).

Defendant's Motion and Objection conflate the distinct legal standards for reasonable suspicion and probable cause.[2]  He relies on *Ybarra v. Illinois*, 444 U.S. 85, 96 (1979).  Dkt. No.

---

[2] Defendant cites *United States v. Cervine*, 347 F.3d 865, 869 n.2 (10th Cir. 2003), for the premise that, "[t]o justify the traffic stop at its inception, the police must have either reasonable suspicion or probable cause."  Dkt. No. 22 at 2 (quotation omitted).  While Defendant's statement is not technically inaccurate, it mischaracterizes *Cervine*.  The cited footnote, when read in its succinct entirety, is clear that the relevant inquiry only involves the lower standard of reasonable suspicion:

> Mr. Cervine uses the terms "probable cause" and "reasonable suspicion" interchangeably throughout his brief.  However, our case law makes clear that "[w]hile either probable cause or reasonable suspicion is sufficient to justify a traffic stop, only the lesser requirement of reasonable suspicion is necessary."  *United States v. Callarman*, 273 F.3d 1284, 1287 (10th Cir. 2001).  Thus, the

22 at 3 (Motion); Dkt. No. 50 at 3, 9 (Objection).[3]  But *Ybarra* does not control here, as it addressed execution of a search warrant based on probable cause, not an investigative detention.  *See* 444 U.S. at 91 ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to *probable cause* to search that person.  *Where the standard is probable cause*, a search or seizure of a person must be supported *by probable cause* particularized with respect to that person." (emphasis added)).  The Court will review the Motion and Objection under the proper standard of reasonable suspicion.  *See Cervine*, 347 F.3d at 869 n.2.

"An investigatory detention is justified at its inception if the specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has or is committing a crime."  *McHugh*, 639 F.3d at 1255.  "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct."  *United States v. Arvizu*, 534 U.S. 266, 277 (2002).  Indeed, "[r]easonable suspicion may exist even where a 911 call fails to allege criminal activity and the responding officers do not observe any illegal conduct."  *Conner*, 699 F.3d at 1231.  The Court must evaluate the totality of the circumstances to determine whether reasonable suspicion existed, deferring to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions, judging the officer's conduct in light of common sense and ordinary human experience, and assessing whether the facts available to the detaining officer at the time warranted an officer of reasonable caution in believing the action taken was appropriate.  *Id.*; *McHugh*, 639 F.3d at 1256.

---

relevant inquiry is whether the troopers had *reasonable suspicion* to stop the car driven by Mr. Cervine.

347 F.3d at 869 n.2 (emphasis in original).

[3]  The Government does not challenge Defendant's legal reliance on *Ybarra*, instead only factually distinguishing it.  Dkt. No. 51 at 4.

After performing the required de novo review, the Court agrees with the Magistrate Judge's conclusion that reasonable suspicion existed. As described in the R&R, Reynolds had investigated and personally inspected an abandoned ATV in the area one week earlier; the ATV Defendant was riding largely matched the characteristics of that ATV; officers were investigating stolen property, which they believed to be stored nearby; and officers had observed items nearby that matched the description of stolen property.[4] DCSO had issued a "be on the lookout" alert about a stolen ATV in the same area. The Magistrate Judge cited numerous Tenth Circuit cases supporting her determination. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (location is not enough for reasonable suspicion standing alone, but location also need not be ignored); *United States v. Goebel*, 959 F.3d 1259, 1267 (10th Cir. 2020) (explaining "courts universally find" that criminal activity in the neighborhood "weighs in favor of reasonable suspicion"); *United States v. Burleson*, 657 F.3d 1040, 1048 (10th Cir. 2011) (where city had several recent reports of stolen dogs, it was objectively reasonable for an officer to investigate whether an unleashed dog in a defendant's possession had been stolen); *United States v. Sanchez*, 13 F.4th 1063, 1071 (10th Cir. 2021) (fact that stolen vehicles had previously been recovered from the same parking lot was one of several facts supporting reasonable suspicion). The Magistrate Judge did not err in her conclusion that reasonable suspicion existed.

---

[4] Defendant asks the Court to parse potentially conflicting witness testimony. Dkt. No. 50 at 8-9. The Government highlights several mischaracterizations in Defendant's description of this allegedly conflicting testimony. Dkt. No. 51 at 5-6. Regardless, the Court declines to engage in Defendant's requested parsing for two reasons: first, the Magistrate Judge, as the court receiving the witness testimony, was in the best position to assess witness credibility and weigh testimony accordingly; and second, the general situation of the officers' investigation into the abandoned ATV and stolen goods was sufficient to meet the low threshold required for a reasonable suspicion that criminal activity was afoot.

## CONCLUSION

IT IS THEREFORE ORDERED that the Court ADOPTS the Magistrate Judge's R&R [Dkt. No. 41], DENIES Defendant's motion to suppress [Dkt. No. 22], and OVERRULES Defendant's objection to the R&R [Dkt. No. 50].

DATED this 12th day of December 2022.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE